Manly, J.
If we suppose in the second action of replevin, which the bill alleges is now pending, the plaintiff established his right to the slave in question, and, by consequence, established the position, that the results of the first action were not in accordance with the rights of the parties, still, the bill is without equity.
The court of equity does not interfere to prevent the enforcing of a recovery, at law, for errors of both law and fact, much less will it interfere to prevent the operation of what may be regarded as a hard feature in the law. The assessment of damages, after the nonsuit, on the trial of the first action of replevin, was in strict accordance with the course of the Court, under the law regulating that action. No error is even alleged, and the probability that a second action may result differently,, is not-ground for arresting the execution of the first.
It is not an anomaly without parallel, that property upon one trial, is established to be in a party, and upon a second, found to be in the other. Such inconsistency results from the infirmity of human tribunals, and is, for the most part, caused by the blunder or laches of the losing party on the trial of the first. A court of equity is, surely, not expected to- protect parties from the consequences of their blunders and neg: ligences at law.
There were open to the plaintiff, in this case, three- modes of redress: an action of trover, of detinue', and of replevin. He chose the latter, which is subject to the incident, that if he lose the suit by verdict or nonsuit, where he is put into possession of the property under the writ, damages shall be-assessed against him for the detention. The recovery complained of, therefore, arose from his preference of a form- of action, and failure in it from any cause. Whosover adopts it,, is supposed to foresee its perils, and, relying upon the impregnable nature and easy proof of his title, to be willing, to encounter the hazards. It may be remarked, in this connection,, that our opinion, as to the want of equity in the bill, is not at all dependant upon the enquiry, whether the- damages recovered in the first action may, or may not be recovered back in *114 the second, should the plaintiff succeed. Eor, if it be conceded that they may be, there is no allegation of the insolvency of Morrisett, whereby the judgment, at law, would be of no avail.
This brings us to another ground of objection to the bill, viz., that no relief is sought by it, which can constitute a corpus for the Court’s jurisdiction.
It is hardly necessary for us to refer to the many cases, in which we have found it necessary to declare, recently, that a bill for an injunction, merely, without asking other relief, cannot be maintained, except in cases of waste and irreparable injury. In all other cases, injunction is ancillary process, and is only proper where it is in aid of a primary equity, set forth in the bill. No such equity is disclosed.
It is not a bill to have judgments at law, set off, the one against the other; for there is no prayer to that effect, and no allegation of defendant’s insolvency; which is the basis of equity jurisdiction in such cases; Iredell v. Langston, 1 Dev. Eq. 392. Its object seems to be to obtain a reversal by the Court of Equity of the j udgment in the first action of replev-in, upon the ground,' that there is no relief, at law, through the subsequent action or otherwise. But this is clearly inadmissible. A court of equity never allows an appeal to it for a new trial of a case, which depends upon legal defenses, and which has been tried at law; Pearce v. Nailing, 1 Dev. Eq. 289.
Pee Cueiam, Bill dismissed.